# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE KELLY,<br><br>             Plaintiff,<br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>             Defendant. | Case No. 11cv3045 BTM(PCL)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff and Defendant have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion is **DENIED** and Defendant's motion is **GRANTED**.

## I. PROCEDURAL BACKGROUND

On July 24, 2007, Plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. (Tr. 220-226.) Plaintiff alleged disability as of March 1, 2003. After a hearing before an Administrative Law Judge ("ALJ") on June 17, 2009, the ALJ found that Plaintiff was not disabled. (Tr. 99-105.) Plaintiff filed a request for review, which the Appeals Council granted. (Tr. 109-11.) The Appeals Council remanded Plaintiff's case for a new hearing and directed the ALJ to obtain any available updated treatment records, further evaluate Plaintiff's subjective complaints, and provide rationale in accordance with

disability regulations pertaining to the evaluation of symptoms, and, if warranted, obtain supplemental evidence from a vocational expert. (Tr. 110.)

On remand, ALJ Peter J. Valentino held a hearing on July 27, 2010. In a decision dated August 20, 2010, the ALJ found that Plaintiff was not disabled from the alleged onset date of March 1, 2003, through the date of the decision. (Tr. 13-23.) On August 31, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. 4-9.) In this action, Plaintiff seeks judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## II.  ALJ'S FINDINGS AND CONCLUSIONS

The ALJ found that Plaintiff was insured for disability insurance benefits through March 31, 2008.

The ALJ found that Plaintiff has the following severe impairments: status-post knife injury to left little finger, mild right carpel tunnel syndrome, degenerative disc disease of the spine without neurologic deficit, mild osteoarthritis of the knees, and hypertension.

The ALJ concluded that Plaintiff's impairment or combination of impairments do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ determined that Plaintiff has the residual functional capacity to perform light work with the following additional limitations: occasional lifting and carrying of twenty pounds, frequent lifting and carrying of ten pounds, precluded from climbing ladders, scaffolds, or ropes, precluded from working at unprotected heights, should not be exposed to concentrated vibration or hazards, and has a limitation with regard to the left hand to occasional fingering but frequent reaching and handling and a limitation in regard to the right hand to frequent handling, reaching, and fingering.

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform past relevant work as a car lot attendant. The ALJ also found that there are other jobs existing in the national economy that Plaintiff is able to form, including furniture rental clerk (DOT No. 295.357-018) and usher (DOT No. 344.677-014).

Accordingly, the ALJ concluded that Plaintiff has not been under a "disability" as defined in the Social Security Act, at any time from his alleged onset date of March 1, 2003, through the date of the ALJ's decision.[1]

## III. STANDARD OF REVIEW

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). If the evidence can reasonably support either affirmance or reversal, a court may not substitute its judgment for that of the Commissioner. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## IV. DISCUSSION

Plaintiff contends that the ALJ's decision was erroneous because the ALJ improperly rejected the opinion of Plaintiff's treating physician Dr. Boquin, M.D, regarding Plaintiff's functional limitations. As discussed below, the Court finds that the ALJ provided sufficient reasons for rejecting Dr. Boquin's opinion and therefore affirms the ALJ's decision.

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

### 1. Dr. Boquin's Opinion

On June 15, 2009, Dr. Boquin, a doctor at Vista Community Clinic, completed a "Physical Residual Functional Capacity Questionnaire" regarding Plaintiff. (Tr. 489-98.) Dr. Boquin listed his diagnosis as (1) severe osteoarthritis in Plaintiff's knees, (2) flexion contraction left fingers, and (3) severe arterial hypertension. (Tr. 494.) Dr. Boquin concluded that Plaintiff was unable to work through the end of the year. (Id.)

Dr. Boquin noted on the form that Plaintiff experiences severe and constant pain that is worse while walking or bending legs. (Tr. 489.) Dr. Boquin identified the clinical findings and objective signs as decreased range of motion at the knee joints, increased pain on passive mobilization and inability to flex left fingers. (Id.)

Dr. Boquin found that Plaintiff had a number of functional limitations and could sit for only 1 hour at time, stand for 30 minutes at a time, sit and stand/walk for a total of less than 2 hours in one day, lift or carry less than 10 pounds occasionally, rarely lift or carry 10 pounds, and rarely twist. (Tr. 490-92.) According to Dr. Boquin, Plaintiff needed to be able to shift at will and take frequent unscheduled breaks. (Tr. 491.) Dr. Boquin indicated that Plaintiff's physical condition was affected by anxiety and psychological factors and that Plaintiff's experience of pain interfered with his attention and concentration constantly. (Tr. 490.)

Dr. Boquin noted that Plaintiff had significant limitations with respect to reaching, handling, and fingering. (Tr. 492.) Dr. Boquin indicated that Plaintiff could reach with his right arm 70% of a work day, reach with his left arm 5% of the day, and could never use his left hand for grasping, turning, twisting, or fine manipulation. (Id.)

### 2. Law Governing Treating Physicians' Opinions

As a general matter, opinions of treating physicians are given controlling weight when supported by medically acceptable diagnostic techniques and when not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Where a treating physician's opinion is contradicted by another doctor, the ALJ may not

reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1990). In doing so, the ALJ must do more than proffer his own conclusions – he must set forth his own interpretations and why they are superior to that of the treating physician's. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ may meet this burden by conducting a detailed and thorough discussion of the facts and conflicting evidence, and by explaining his interpretations and findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Even if the treating physician's opinion is inconsistent with other substantial evidence in the record, the treating physician's opinions are still entitled to deference and must be weighted using the factors provided in 20 C.F.R. § 404.1527. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); SSR 96-2p. These factors include, inter alia, the "nature and extent of the treatment relationship" between the patient and the treating physician, the "length of the treatment relationship and the frequency of examination," the amount of relevant evidence that supports the opinion and the quality of the explanation provided, and the consistency of the medical opinion with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6).

### 3. ALJ's Specific and Legitimate Reasons

The ALJ afforded considerable weight to the opinion of Dr. Lorber, an orthopedic surgeon who reviewed Plaintiff's medical records and testified as a medical expert at the hearing before the ALJ. Dr. Lorber opined that Plaintiff has a severe impairment involving his lumbar spine and thoracic spine and has an impairment involving his left hand.[2] (Tr. 81.) Dr. Lorber concluded that Plaintiff was reduced to a light level of work, involving occasional

---

[2] As noted by Dr. Lorber, X-rays taken on November 2, 1998, showed an old compression fracture of T12 with spurring anteriorly at the anterior and inferior aspect of T12 and anterior aspect of L1, and ossification anterior to C1 as well as diminution of the C1 and C2 interspace. (Tr. 370.) A February 9, 2000 MRI revealed central canal stenosis secondary to congenitally short pedicles at L4-L5. (Tr. 370-71.) X-rays of Plaintiff's cervical spine taken in February 2008, revealed degenerative changes at the C5-6 level with straightening. (Tr. 417.)

lifting of up to 20 pounds, occasional bending, stooping, crouching, and kneeling, and no restrictions on standing or walking. (Id.)[3] Dr. Lorber stated that Plaintiff may have some minimal restrictions of fingering involving the left hand but no other exertional, environmental, or manipulative restrictions. (Id.)

The ALJ afforded "less weight" to the opinions of non-examining medical consultants Drs. Gleason and Lizarraras, who assessed limitations consistent with the performance of light work activity with a limitation to frequent reaching and fingering. (Tr. 350-56; 420-21.) The ALJ afforded "little weight" to the opinion of Dr. Boquin. (Tr. 21.)

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Boquin's opinion, including his opinion regarding Plaintiff's limitations with respect to reaching at or above shoulder level. The Court disagrees.

The ALJ reasoned that Dr. Boquin had failed to include any specific medical findings to support restricting sitting, standing, or walking to less than two hours in an eight-hour day, and appeared to rely on Plaintiff's subjective complaints, which the ALJ found not to be credible. (Tr. 20.) Dr. Boquin's clinical findings were limited to observation of a decreased range of motion of the knee joints, an increase of pain on passive mobilization, and an inability to flex the left little finger and extend the left fingers. (Tr. 489, 550.) Although Dr. Boquin noted on the Questionnaire that the frequency and length of contact with Plaintiff was two months, the record does not include any documents showing that Plaintiff saw Dr. Boquin before June 15, 2009.[4] Plaintiff saw another doctor at Vista Community Clinic on June 3, 2009. (Tr. 551.) That doctor noted that Plaintiff had decreased hand movement due to a stabbing, was unable to bend his knee past a certain point (<70 degrees), and had some ACL/MCL pain although there was no redness, warmth, or swelling. (Id.) The limited

---

[3] Dr. Lorber explained that Plaintiff underwent arthroscopy on his knee in 1993 and was diagnosed with osteoarthritis in 2009 after complaining of bilateral knee pain, but has not received further evaluation or treatment of his knee. (Tr. 79, 461, 550.)

[4] Plaintiff went to the Vista Community Clinic a few times in January-February 2008. (Tr. 407-411.) It appears that Plaintiff missed an appointment with Dr. Boquin on February 11, 2008. (Tr. 407.)

medical findings by Dr. Boquin and the other Vista Community Clinic doctor do not support the severe limitations indicated by Dr. Boquin, particularly the limitations regarding sitting, standing, and reaching.

Due to the lack of clinical evidence, it seems that Dr. Boquin must have been relying in large part on Plaintiff's pain and symptom testimony in filling out the Questionnaire. The ALJ determined that Plaintiff's pain and symptom testimony was not credible. (Tr. 20.)[5] Plaintiff does not challenge the ALJ's credibility finding. Accordingly, the Court concludes that it was not error for the ALJ to reject Dr. Boquin's opinion on the ground that it was primarily based on Plaintiff's subjective complaints, which are not fully credible. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that substantial evidence supported the ALJ's decision not to rely on doctors' opinions, which were based on claimant's subjective complaints, where claimant was found not to be credible).

The ALJ also pointed out that Dr. Boquin's assessment appeared to be overreaching with respect to the level of restriction, as shown by Dr. Boquin's opinion that Plaintiff was completely unable to use his left hand for grasping, turning or fine manipulation. (Tr. 21.) Plaintiff claimed that he had surgery on his left hand in 1993 and that all of the tendons were cut in his fingers, preventing him from bending his fingers properly. (Tr. 58. 75.) However, Plaintiff admitted that he was able to use his left hand to work from 1993 to 2003, including his job at San Diego Auto Auction, a position which the vocational expert testified best classifies as a "lot attendant," which involves frequent reaching and handling and occasional fingering. (Tr. 55, 75, 85-86.)[6]

---

[5] The ALJ found that Plaintiff was not credible because his daily activities belie his allegations of impairment, his treatment has been conservative, no significant neurological deficits were found on examination, there has been no end-organ damage despite poorly controlled hypertension, there is no documentation of debilitating side effects from medication, and Plaintiff lacked candor with his medical provider concerning the nature and extent of his drug use. (Tr. 20.)

[6] The ALJ also gave as a reason for rejecting Dr. Boquin's opinion that the opinion "is overreaching in time in that he indicates the description of symptoms and limitations spans the claimant's entire lifetime." (Tr. 21.) In response to the question, "What is the earliest date that the description of symptoms and limitations in this questionnaire applies?," Dr. Boquin wrote "Lifetime." (Tr. 493.) It appears that Dr. Boquin misread the question and believed that it asked how long Plaintiff's symptoms and limitations will last.

Another reason the ALJ gave for giving little weight to Dr. Boquin's opinion is that there is a variance between the doctor's assessment and the Plaintiff's self-reported daily activities. The Court agrees that Plaintiff's daily activities seem inconsistent with, at the very least, Dr. Boquin's opinion that Plaintiff could not use his left hand at all and could only reach with his left arm for 5% of a work day. At the first ALJ hearing on June 17, 2009, Plaintiff stated that he didn't drive anymore because his left hand stiffens up. (Tr. 43.) However, at the July 27, 2010 hearing, Plaintiff testified that he takes care of his disabled girlfriend, works around the house, drives her to her appointments, picks up and drops off her children at school, and tries to clean up the yard. (Tr. 64-65.)

In sum, the ALJ provided "specific and legitimate reasons" supported by substantial evidence in the record for affording little weight to Dr. Boquin's opinion. Therefore, the Court affirms the ALJ's decision.

## V. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**. The Clerk shall enter judgment for Defendant affirming the decision of the Commissioner.

**IT IS SO ORDERED**.

**DATED: March 29, 2013**

*[signature]*
**BARRY TED MOSKOWITZ, Chief Judge**
**United States District Court**